1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11

TWILA D. B.,[1]

12

Plaintiff,

13

v.

14

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

15

16

Defendant.

Case No. 2:20-cv-06304-AFM

**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER**

17

18

Plaintiff filed this action seeking review of the Commissioner's final decision

19

denying her application for supplemental security income. In accordance with the

20

case management order, the parties have filed briefs addressing the merits of the

21

disputed issues. The matter is now ready for decision.

22

**BACKGROUND**

23

In September 2017, Plaintiff filed an application for supplemental security

24

income, alleging disability beginning September 17, 2016. (Administrative Record

25

("AR") 172-178.) Plaintiff's application was denied. (AR 99-103.) On July 24, 2019,

26

27

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

28

Plaintiff appeared with counsel at a hearing conducted before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff and a vocational expert ("VE") testified. (AR 534-567.)

On August 5, 2019, the ALJ issued a decision finding that Plaintiff suffered from the following medically severe impairments: degenerative disc disease, pelvic floor dysfunction status post hysterectomy, and depression. (AR 18.) After determining that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ assessed Plaintiff as retaining the residual functional capacity ("RFC") to perform medium work with the following restrictions: Plaintiff can frequently operate hand and foot controls; frequently climb, balance, stoop, kneel, crouch, and crawl; she can perform work that involves tasks that can be learned within a short demonstration period of up to approximately 30 days with no more than frequent changes in the workplace tasks and duties; she can work primarily with things and have only occasional contact with people; she can maintain concentration, persistence, and pace at this limited range of tasks for two hours at a time before taking a regularly scheduled break. (AR 20.) Relying on the testimony of the VE, the ALJ determined that Plaintiff was not able to perform her past relevant work as a security guard. (AR 27.) Also relying on the VE's testimony, the ALJ found that Plaintiff was able to perform jobs existing in significant numbers in the national economy, including counter supply worker, housekeeper laundry aide, and kitchen helper. (AR 28.) Accordingly, the ALJ determined that Plaintiff was not disabled from September 27, 2017 (the date of Plaintiff's application) through the date of his decision. (AR 29.) The Appeals Council denied review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether Plaintiff is entitled to a remand based upon the unconstitutional removal procedure in effect during the tenure of Andrew Saul.

2. Whether the ALJ erred by rejecting standing and walking limitations included in the opinions of the consultative examiner and the non-examining state agency physician.

3. Whether the ALJ erred by failing to require the VE to identify full-time work.

4. Whether the ALJ erred by relying on the VE's testimony where it was contradicted by "reliable published government data."

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In the social security context, the substantial evidence threshold is "not high." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019). This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

## I. Plaintiff's Constitutional Challenge

After filing her brief in support of her complaint, Plaintiff filed a Notice of New Authority (ECF 30) and a Supplemental Brief (ECF 33) challenging the constitutionality of the ALJ's decision. Plaintiff contends that 42 U.S.C. § 902(a)(3)

– which limits the President's authority to remove the Commissioner of Social Security without good cause – violates separation of powers. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020) (holding that a for-cause restriction of the President's executive power to remove the CFPB's single director violated the separation of powers doctrine). She argues that the unconstitutional removal provision rendered Andrew Saul's tenure as Commissioner (from June 17, 2019 to July 11, 2021) unconstitutional and, consequently, the ALJ assigned to hear her case was "not subject to sufficient accountability." (ECF 33 at 2-4.) According to Plaintiff, this constitutional error entitles her to a de novo hearing. (ECF 33 at 4.)

The Commissioner concedes that § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (ECF 38 at 3-4.) Nevertheless, the Commissioner argues Plaintiff is not entitled to a remand because the ALJ who heard Plaintiff's claim was properly appointed by Acting Commissioner Nancy Berryhill and because Plaintiff has failed to show any connection between the unconstitutional removal clause and the ALJ's decision denying her benefits. The Commissioner also argues that the Court should deny Plaintiff's request for a new hearing based upon other legal and prudential considerations. (ECF 38 at 8-13.) For the following reasons, the Court rejects Plaintiff's claim.

Plaintiff's argument is based upon *Lucia v. SEC*, 138 S. Ct. 2044 (2018). In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission are Officers of the United States and must be constitutionally appointed. *Lucia*, 138 S. Ct. at 2055. The Court concluded that the "appropriate" remedy for an adjudication tainted with an appointments violation is a new "hearing before a properly appointed" official. *Lucia*, 138 S. Ct. at 2055 (citing *Ryder v. United States*, 515 U.S. 177, 182-183 (1995)). Unlike *Lucia*, however, Plaintiff does not rely on an allegedly unconstitutional appointment. To the contrary, she concedes that ALJ Ben Willner was properly appointed by Acting Commissioner Berryhill at the time he decided

Plaintiff's disability claim. (*See* ECF 33 at 2.)[2] Therefore, there is no Appointments Clause violation. *See Rivera-Herrera v. Kijakazi,* 2021 WL 5450230, at *6 (E.D. Cal. Nov. 22, 2021) ("the ALJ who adjudicated Plaintiff's claim on September 18, 2019 was properly appointed pursuant to former Acting Commissioner Berryhill's July 16, 2018 ratification of ALJ appointments. As such, there is no Appointments Clause violation."); *Lisa Y. v. Comm'r of Soc. Sec.*, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021) (same); *Marrs v. Comm'r of Soc. Sec.*, 2021 WL 4552254, at *4 (N.D. Tex. Oct. 5, 2021) (same).

Notwithstanding her attempt to characterize it otherwise, Plaintiff's claim is based upon an allegedly unconstitutional removal provision, and therefore the controlling law is set forth in *Collins v. Yellen*, 141 S. Ct. 1761 (2021). *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions."). In *Collins*, the plaintiffs sought a judicial declaration invalidating prior actions by the FHFA directors, who possessed removal protection and therefore headed an unconstitutionally structured agency. *Collins*, 141 S. Ct. at 1787. The Supreme Court found such relief unwarranted. *Id*. at 1788. Rather, a plaintiff must demonstrate that the unconstitutional provision actually caused him or her harm. *Id*. at 1788-1789. The Supreme Court refused to invalidate the prior actions in their entirety, explaining:

> All the officers who headed the FHFA during the time in question were
> properly *appointed*. Although the statute unconstitutionally limited the
> President's authority to *remove* the confirmed Directors, there was no
> constitutional defect in the statutorily prescribed method of appointment

---

[2] On July 16, 2018, responding to the decision in *Lucia*, the acting Commissioner of the SSA, Nancy Berryhill ratified the appointments of ALJs and administrative appeals judges (who were previously appointed by lower-level staff, rather than the Commissioner herself) to address any prospective Appointments Clause concerns. *See Rivera-Herrera v. Kijakazi*, 2021 WL 5450230, at *5 (E.D. Cal. Nov. 22, 2021); SSR 19-1p, 84 Fed. Reg. 9582, 9583 (2019). Plaintiff does not allege that Acting Commissioner Berryhill's authority was tainted by the unconstitutional removal provision.

to that office. As a result, there is no reason to regard any of the actions taken by the FHFA ... as void.

*Id*. at 1787 (emphasis in original). Accordingly, a claimant seeking relief must show that an unconstitutional removal restriction actually caused her harm. *See Collins*, 141 S. Ct. at 1787-1789 & n.24 (an unconstitutional removal restriction "does not mean that actions taken by such an officer are void *ab initio* and must be undone"); *Decker Coal Co.*, 8 F.4th at 1137 ("Here, the ALJ lawfully exercised power that he possessed by virtue of his appointment, which the Secretary ratified before the ALJ adjudicated the claim. Absent a showing of harm, we refuse to unwind the decisions below.")

Plaintiff identifies no particular harm suffered by virtue of her claim being adjudicated during Commissioner Saul's tenure by an ALJ who was otherwise properly appointed. She has failed to show any connection between the unconstitutional removal clause and ALJ Willner's decision denying her benefits. Further, nothing in the record supports the conclusion that the disability decision in Plaintiff's case is in anyway traceable to Commissioner Saul. Accordingly, Plaintiff is not entitled to a new hearing. *See Sean E. M. v. Kijakazi,* 2022 WL 267406, at *5 (N.D. Cal. Jan. 28, 2022) (because plaintiff failed to show connection between the unconstitutional removal provision and denial of benefits, he was not entitled to new hearing based upon constitutional challenge); *Ramos v. Comm'r of Soc. Sec*., 2022 WL 105108, at *4 (E.D. Cal. Jan. 11, 2022) (same); *Rivera-Herrera,* 2021 WL 5450230, at *8 (same); *Lisa Y.*, 2021 WL 5177363, at *8 ("Reversal is not mandated under *Seila Law* or *Collins* because § 902(a)(3)'s removal clause is severable, and because there is no possibility § 902(a)(3)'s removal clause harmed Plaintiff."); *Catherine J.S.W. v. Comm'r of Soc. Sec*., 2021 WL 5276522, at *8 (W.D. Wash. Nov. 12, 2021) (same); *see also Decker Coal*, 8 F.4th at 1136-1138 (plaintiff not entitled to new hearing based upon allegedly unconstitutional removal provision

where the plaintiff failed to show make any showing of a nexus between the allegedly unconstitutional removal provisions and the ALJ's decision).

## II.    Plaintiff's Standing and Walking Limitations

Plaintiff contends that the ALJ erred by failing to consider and specifically reject the standing and walking limitations included in the opinions of E. Christian, M.D., and Daniela Drake, M.D. Plaintiff points out that although the ALJ purported to agree with the findings and opinions of Drs. Christian and Drake, he failed to include a limitation of six hours of standing/walking in his hypothetical posed to the VE. According to Plaintiff, the ALJ was required to either include the standing/walking limitation in his hypothetical or provide legally sufficient reasons for rejecting it. Further, Plaintiff contends that the jobs identified by the VE require the worker to stand or walk for more than six hours in an eight-hour day. In support of this contention, Plaintiff cites non-DOT source data. (ECF 20 at 10-14.)

The Commissioner argues that the ALJ did not reject the standing/walking limitation. Rather, the ALJ's RFC assessment finding that Plaintiff can perform medium work necessarily incorporated that limitation. With respect to the question of whether the jobs identified by the VE may require standing or walking for more than six hours, the Commissioner contends that Plaintiff has forfeited such a claim and that, even if not forfeited, the claim lacks merit. (ECF 28 at 5-14.)

### A.    Relevant Medical Opinions and the ALJ's Decision

Dr. Drake performed a consultative examination in January 2018. (AR 22.) After conducting a physical examination and obtaining an MRI, Dr. Drake opined that Plaintiff is able to lift/carry 50 pounds occasionally and 25 pounds frequently; push and pull on a frequent basis; walk and stand six hours out of an eight-hour workday; sit six hours out of an eight-hour workday; frequently bend, stoop, kneel and crawl; and can walk on uneven terrain, climb ladders, and work at heights frequently. (AR 492-498.) In February 2018, State agency physician Dr. Christian reviewed Plaintiff's medical record and reached the same conclusions as Dr. Drake.

As relevant here, Dr. Christian opined that Plaintiff is able to stand and/or walk for "about 6 hours in an 8-hour workday." (AR 91-93.)

The ALJ found the State agency medical expert's determination persuasive, noting that Dr. Christian "concluded that [Plaintiff] could perform work consistent with the medium exertional level, and frequently push and pull with the extremities, climb, balance, stoop, kneel, crouch, and crawl." (AR 26.) The ALJ also found Dr. Drake's opinion persuasive, again noting that she found that Plaintiff "could perform work consistent with the medium exertional level, frequently push and pull, bend, stoop, kneel, crawl, walk on uneven terrain, climb ladders and work at heights." (AR 27.) Accordingly, the ALJ assessed Plaintiff with the RFC "to perform medium work as defined in 20 CFR 416.967(c)," with various restrictions not relevant to Plaintiff's claim. (AR 20.)

During the hearing, the ALJ asked the VE to assume a hypothetical individual who "can perform medium exertional level work, as that term is defined within the applicable rules and regulations" with additional limitations included in the RFC with which he assessed Plaintiff. (AR 61-62.) The VE testified that such an individual could not perform Plaintiff's past relevant work. (AR 62.) The ALJ then asked if such an individual with the same RFC, with Plaintiff's age, education, and work history and the same RFC could perform other jobs that exist in the national economy. The VE responded affirmatively and identified the jobs of counter supply worker, housekeeper, laundry aid, and kitchen helper, all of which the VE clarified were "medium exertional level." (AR 62-63.)

### B.    Law and Analysis

Plaintiff's contention that an ALJ errs by relying on the term "medium work" without explicitly including a limitation to stand/walk six hours in an eight-hour day was recently rejected by the Ninth Circuit. *See Terry v. Saul*, 998 F.3d 1010 (9th Cir.

2021), *cert. denied sub nom. Terry v. Kijakazi*, 142 S. Ct. 769 (2022).[3] In *Terry*, the plaintiff asserted the ALJ determined the he had the ability "to perform medium work as defined in 20 CFR [§] 404.1567(c)" and could "sit, stand or walk up to 6 hours in an 8-hour workday." *Id.*, 998 F.3d at 1012. Questioning the vocational expert, the ALJ indicated Terry had "the capacity to do medium work," but did not identify the sitting, standing, or walking limits. *Id.* at 1013. Appealing the decision, *Terry* argued "the vocational expert's testimony did not constitute substantial evidence supporting the ALJ's finding regarding the availability of work for someone with Terry's limitations because the ALJ did not reference Terry's six-hour standing and walking limitation in his questioning of the expert." *Id.* at 1012-13.

The Court of Appeals rejected the claim, explaining:

"Medium work" is a term of art in disability law with a well-established meaning. 20 C.F.R. § 404.1567(c). While the regulation defining "medium work" does not include any express standing and walking limitation, the Social Security Administration has long interpreted this language to include such a restriction. In a 1983 published Social Security Ruling, the Commissioner interpreted "medium work" to "require[ ] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

Here, the testifying vocational expert had significant experience in the vocational rehabilitation field and as an expert witness. Terry's counsel did not object to the expert's qualifications or otherwise

---

[3] In her reply, filed on August 2, 2021, Plaintiff essentially concedes that *Terry* precludes her argument, but attempts to avoid that result by arguing that *Terry* was wrongly decided, is inconsistent with other Ninth Circuit decisions, and is not binding because – at least as of the date of Plaintiff's brief – the mandate had not issued. (ECF 29 at 2-5.) Since the time Plaintiff filed her reply, however, the formal mandate has issued. (See Ninth Circuit Case No. 19-5600, Dkt. 36 (August 12, 2021)), and the United States Supreme Court has denied a petition for a writ of certiorari. Thus, *Terry* is final and binding on this Court.

challenge the expert's testimony at the administrative hearing. There is
no reason to think that the vocational expert was not familiar with Social
Security Ruling 83-10 and the agency's longstanding interpretation of
"medium work." We thus determine that the ALJ's reference to the term
in his questioning of the expert sufficiently conveyed Terry's standing
and walking limitations.

*Terry*, 998 F.3d at 1013.

Both before and after *Terry*, district courts in the Ninth Circuit have found that
an ALJ's reference to either "light work" or "medium work" is widely understood to
encompass the limitation to stand/walk for six hours in an eight-hour day. *See
Guillermina R. v. Saul,* 2020 WL 5440341, at *3 (C.D. Cal. Sept. 10, 2020) ("by
limiting Plaintiff to light work, the ALJ fairly incorporated the limitation to
walking/standing for a total of six hours in an eight-hour workday"), *aff'd sub nom.
Guillermina R. v. Kijakazi,* 2021 WL 6116636 (9th Cir. Dec. 27, 2021);
*Christopher P. v. Saul*, 2020 WL 551596, at *3 (C.D. Cal. Jan. 31, 2020) (ALJ's
reference to medium work in hypothetical sufficiently captured the plaintiff's RFC
limitations to standing or walking for six hours in an eight-hour workday); *Mitzi D.
v. Saul*, 2019 WL 8112507, at *2 (C.D. Cal. Dec. 13, 2019) ("Given that SSR 83-10
has been in play for over thirty years, there is no reason to think the VE understood
light work to encompass anything other than approximately six hours of standing or
walking.").

Here, as in *Terry*, there is no reason to believe that either the ALJ or the VE in
this case failed to understand medium work as requiring the ability to stand and/or
walk for six hours in an eight-hour workday. [4]Accordingly, the Court concludes that
by limiting Plaintiff to medium work, the ALJ necessarily incorporated the limitation

---

[4] Plaintiff's counsel did not object to the VE's qualifications (AR 40), and the VE's resume reflects
approximately twenty-years of experience as an expert and with vocational rehabilitation. (*See* AR
257-258.)

to walking/standing for a total of six hours in an eight-hour workday. It follows that the hypothetical to the VE was complete, and the ALJ could properly rely upon the VE's testimony to determine that there are occupations existing in significant numbers that Plaintiff could perform. *See Terry*, 998 F.3d at 1014 ("the question is whether the ALJ and the expert would have shared an understanding that the term 'medium work' implies a six-hour standing and walking limitation. Because we hold that the expert here would have understood the ALJ's question to imply such a limitation, the ALJ's inquiry concerning a hypothetical individual was not incomplete.").

Next, Plaintiff argues that the jobs identified by the VE require standing or walking for more than six hours in an eight-hour workday. As support, Plaintiff cites vocational evidence from "O*NET OnLine DOT crosswalk" and "Occupational Outlook Handbook," and "Occupational Requirements Survey" which she submitted to the Appeals Council with the representative brief. (AR 260-401.) According to Plaintiff, the cited data shows most or many individuals performing the jobs identified by the VE stand or walk more than six hours each day. (*Id.*)

The Commissioner argues that Plaintiff forfeited her challenge to the VE's testimony because she did not raise it at the administrative hearing. Plaintiff's counsel could have questioned the VE about the standing or walking requirements of the occupations she identified, but he did not do so. (ECF 28 at 10; *see* AR 65-66.) Instead, she raised it for the first time to the Appeals Counsel by offering competing vocational evidence. There is some support for concluding that under these circumstances, Plaintiff forfeited her claim. *See Talley v. Kijakazi*, 2021 WL 5917596, at *1 (9th Cir. Dec. 15, 2021) (plaintiff forfeited challenge to VE's testimony by failing to raise issue of standing/walking requirements at administrative hearing and instead waiting to present competing vocational evidence to Appeals Council) (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1109-1110 (9th Cir. 2017)); *Shapiro v. Saul*, 833 F. App'x 695, 696 (9th Cir. 2021) ("the submission of new

evidence to the Appeals Council does not resolve the forfeiture issue, because the issue was not first raised before the ALJ"); *Roderick L. A. G. v. Saul*, 2021 WL 2590159, at *4 (C.D. Cal. June 24, 2021) (same). However, there is also authority suggesting the contrary is true. *See Jaquez v. Saul*, 840 F. App'x 246, 247 n.2 (9th Cir. 2021) (rejecting contention that the plaintiff had forfeited or waived an issue relying on new vocational evidence because "the Appeals Council considered this evidence in denying [the plaintiff's] appeal") (citing *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157 (9th Cir. 2012).

The Court need not resolve the issue because, even assuming Plaintiff's challenge to the vocational evidence is not forfeited, it fails for the following reasons. At step five of the sequential disability analysis, it is the Commissioner's burden to establish that, considering the claimant's residual functional capacity, the claimant can perform other work. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). To make this showing, the ALJ may rely on the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ may pose accurate and detailed hypothetical questions to the VE to establish: (1) what jobs, if any, the claimant can do; and (2) the availability of those jobs in the national economy. *Garrison*, 759 F.3d at 1011. The VE then translates the ALJ's scenarios into "realistic job market probabilities" by testifying about what kinds of jobs the claimant can still perform and whether there is a sufficient number of those jobs available in the economy. *Id.* (quoting *Tackett*, 180 F.3d at 1101). "[I]n the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can

handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015).

Plaintiff does not contend that there is a conflict between the VE's testimony and the DOT. Rather, she challenges the reliability of the VE's testimony based upon external sources which she believes contradict that testimony. The Ninth Circuit rejected a similar argument in *Terry*. 998 F.3d at 1013. Like here, the plaintiff in *Terry* submitted data from O*Net and the Occupational Requirements Survey, which became a part of the record when it was submitted to the Appeals Council. Relying on that data, the plaintiff argued that the majority of the jobs identified by the VE required more than six hours of standing or walking per day. In rejecting that argument, the Ninth Circuit found that the new evidence did not establish "either legal error or a lack of substantial evidence to support the ALJ's disability determination." *Id.* As the Court of Appeals explained:

> The expert's opinion that an individual with Terry's restrictions could work as an order filler, packager, and laundry worker was supported by her unchallenged expertise and her reference to the Dictionary of Occupational Titles. This constituted substantial evidence in support of the ALJ's finding that Terry could perform jobs existing in significant numbers in the national economy. *See Ford*, 950 F.3d at 1159 (holding that an ALJ's reliance on qualified, cogent, and uncontradicted expert testimony generally constitutes substantial evidence in support of the ALJ's finding). Importantly, even where the evidence of record is "susceptible to more than one rational interpretation," we must defer to the Commissioner's interpretation of the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). Because the Commissioner's interpretation of the record regarding occupational characteristics was reasonable, we must defer to it.

*Terry* 998 F.3d at 1013.

Here, as in *Terry*, there was no challenge to the VE's expertise and the VE identified jobs by reference to the Dictionary of Occupational Titles. (*See* AR 40.) *See Terry*, 998 F.3d at 1013. Furthermore, the non-DOT sources Plaintiff cites are not conclusive regarding the standing/walking requirements for the jobs the VE identified, and the ALJ was not required to resolve any conflict between the DOT and the sources identified by Plaintiff. *See, e.g.*, *Grether A. D. v. Saul*, 2021 WL 1664174, at *8 (C.D. Cal. Apr. 28, 2021) (rejecting challenge to VE testimony based upon data contained in ONET and Occu Collect, stating that "the non-DOT sources Plaintiff cites are not conclusive regarding the standing requirements for the jobs the vocational expert identified" and that an ALJ need not resolve conflicts between vocational expert testimony and a source other than the DOT) (citing *Shaibi*, 883 F.3d at 1108-1110); *Talley v. Saul*, 2020 WL 8361923, at *1 (C.D. Cal. Dec. 17, 2020) (collecting cases rejecting claims that vocational expert testimony conflicted with ONET and Occu Collect information; ALJ did not have to consider whether the vocational expert's testimony was consistent with these sources), *aff'd sub nom.*, *Talley v. Kijakazi*, 2021 WL 5917596 (9th Cir. 2021); *Priestly v. Kijakazi*, 2021 WL 5566750, at *10-11 (E.D. Cal. Nov. 29, 2021) (rejecting similar claim, noting that courts have "refused to find that Plaintiff's attorney-owned Occu-Collect resource [is] controlling") (citing *Dickerson v. Saul*, 2021 WL 3832223 (D. Nev. Aug. 27, 2021) (collecting cases)).[5]

Finally, "as numerous courts in this Circuit have concluded, a lay assessment of [raw] data from [sources such as the OOH and the O*NET] fails to undermine the reliability of [a] vocational expert's testimony" in the absence of expert opinion interpreting and assessing that data. *Kevin E. v. Saul*, 2021 WL 134584, at *6 (C.D. Cal. Jan. 14, 2021) (and cases cited therein); *see also Roderick L. A. G.*, 2021 WL

---

[5] The Commissioner points out that the job data submitted by Plaintiff is from a publication called Occu Collect, a for-profit company owned in part by Plaintiff's counsel in this case. (ECF 28 at 13; *see Jean G. v. Saul*, 2020 WL 584735, at *7 (C.D. Cal. Feb. 6, 2020).

2590159, at *7 ("Plaintiff's lay interpretation of the vocational evidence does not trump the expertise of the [vocational expert]"); *Marcelino P. v. Saul*, 2021 WL 1215794, at *4 (C.D. Cal. Mar. 30, 2021) (concluding the Court could not "credit plaintiff's lay interpretation of raw statistical vocational data over the expertise of the [vocational expert]"). Without expert opinion interpreting and assessing the raw data, information obtained by a lay person from sources such as O*NET shows, at most, that "evidence can be interpreted in different ways." *Id*.

The ALJ here properly determined that the VE's testimony was consistent with the DOT. (AR 40.) There was no obvious conflict between Plaintiff's limitation to standing and walking six hours in an eight-hour day and the jobs the vocational expert identified. Thus, the VE's testimony constitutes substantial evidence upon which the ALJ properly relied.

### III. Full-Time Work

Plaintiff contends that the ALJ failed to explicitly direct the VE to identify full-time work that she can perform. According to Plaintiff, the ALJ and VE might have included part-time work in their analysis, and it is "potentially unclear" whether part-time work might constitute substantial gainful employment. Plaintiff's claim relies upon the same newly-submitted evidence mentioned above to argue that workers performing the occupations identified by the VE "often" do not work a full-time work schedule. (ECF 20 at 14-17.)

Even assuming that part-time work would not satisfy the Commissioner's burden at Step Five, the Court finds Plaintiff's claim unpersuasive.[6] Other than

---

[6] As Plaintiff points out, the law regarding whether the Commissioner may rely on part-time jobs to satisfy the burden at Step Five is not entirely clear. (ECF 20 at 14-15; ECF 29 at 5-6.) *See Few v. Comm'r of Soc. Sec.*, 2021 WL 1103706, at *6 n.6 (E.D. Cal. Mar. 23, 2021) (declining to resolve the "lurking legal question of whether the Commissioner can rely on the availability of part-time jobs to satisfy his step five burden to show that there is other 'substantial gainful work' plaintiff can do that exists 'in significant numbers.' 42 U.S.C. § 423(d)(2)(A). District courts have resolved this question in different ways, and the Ninth Circuit has not yet answered it. In the present case,

Plaintiff's speculation, there is no indication in the record that the VE included the availability of part-time work when answering the hypothetical questions posed by the ALJ. A fair reading of the record indicates that the ALJ and VE both contemplated full-time work. During the VE's testimony, both the ALJ and the VE referenced "medium work" which, as discussed above, includes that ability to stand/walk for six hours in an eight-hour workday; the ALJ explicitly inquired about Plaintiff's ability to perform work "the customary eight-hour workday;" and the ALJ and VE discussed the effect  of missing three or more days of work per month. (AR 61-64.) *See Roderick L. A. G.,* 2021 WL 2590159, at \*4 (rejecting similar claim, stating that "there is no indication in the record that the VE included the availability of part-time work when answering the hypothetical questions posed at step five").

Further, as Plaintiff concedes, SSR 96-8p provides that RFC ordinarily contemplates an individual's ability to perform sustained work activities on a regular and continuing basis, which is defined as "8 hours a day for 5 days a week or an equivalent work schedule." (ECF 20 at 14-15.) The VE had 20 years of experience in vocational rehabilitation consulting and counseling and worked as a VE for the Social Security Administration since 2000.  There is no reason to conclude that the VE did not know that an RFC assessment was "an individual's ability to do sustained work-related ... activities in a work setting" for "8 hours a day, for 5 days a week," and that she was asked to identify national jobs that constituted full-time substantial gainful activity. See ("SSR") 96-8p, 1996 WL 374184 at \*1. Nothing in the record indicates that there was any confusion about whether the VE was testifying about the availability of solely full-time work. Plaintiff's counsel did not query whether the jobs identified by the VE were all full-time. Indeed, Plaintiff's counsel did not restrict his own hypothetical questions to full-time work. (*See* AR 65-66.) Thus, the record

---

the Court need not resolve the issue because Plaintiff has failed to show that the Commissioner's decision was based upon finding her capable of performing part-time work.

does not support Plaintiff's speculative argument that the VE failed to restrict her testimony to full-time work. *See Roderick L. A. G.*, 2021 WL 2590159, at *4 (rejecting similar claim based upon VE's experience, SSR 96-8p, absence of any indication in the record that VE or ALJ intended to identify anything other than full-time work).

Finally, Plaintiff argues that the Commissioner's decision that she is capable of performing jobs constituting substantial gainful activity is not supported by substantial evidence because she has submitted "uncontradicted evidence that counter supply workers, as part of dining room and cafeteria attendants and bartender helpers do not work a full-time work schedule in 72% of jobs;" laundry aide housekeeper, hospital cleaner, or maids and housekeeping keepers in general, do not work a full-time schedule in 60% of jobs: and "kitchen helpers or dishwashers do not work a full-time schedule in 90% of jobs." (ECF 20 at 16.) For the same reasons discussed above, however, Plaintiff's non-DOT data regarding the percentage of workers of generally work less than full-time does not demonstrate that the ALJ committed legal error in accepting the VE's testimony or undermine the sufficiency of the VE's opinion. *See Roderick L. A. G.*, 2021 WL 2590159, at *5 (rejecting identical argument based upon same source evidence regarding percentage of jobs identified by VE that were performed part-time, explaining that the ALJ was not required to consider such non-DOT evidence and it did not undermine the sufficiency of the VE's testimony) (citing *Shaibi*, 883 F.3d at 1109-1110 (finding no duty to inquire into an alleged conflict between the VE's testimony and non-DOT sources)); *David G. v. Saul*, 2020 WL 1184434, at *5 (C.D. Cal. Mar. 11, 2020) (stating "courts in this circuit have consistently found that an ALJ is under no obligation to resolve a conflict between VE testimony and JBP or O*NET data" and "Plaintiff's subjective lay assessment of the data [from various non-DOT sources] is insufficient to

undermine the VE's analysis."), *aff;d sub nom. George v. Saul*, 837 F. App'x 516 (9th Cir. 2021).[7]

## IV.   Plaintiff's Limitation on Contact with Others

The VE identified three occupations that an individual with Plaintiff's background and RFC – including a limitation to occasional contact with others – could perform. As the Commissioner points out, the DOT does not set forth the extent of a worker's contact with others associated with the occupations of counter supply worker, housekeeper laundry aide, and kitchen helper.   *See* DOT 319.687-010 (counter supply worker), available at 1991 WL 672772; DOT 323.687-010 (housekeeper laundry aide, or "cleaner"), available at 1991 WL 672782; DOT 318.687-010 (kitchen helper), available at 1991 WL 672755. The VE testified that such information was not addressed by the DOT and explained that she relied upon her experience and training as a vocational counselor to reach her opinion. (AR 66.) Plaintiff does not contend that the VE's testimony "conflicted" with the DOT. Although there is no controlling Ninth Circuit authority, the Court agrees with those cases that have held that where the DOT is silent as to certain job requirements, the ALJ is entitled to rely upon vocational expertise as to that requirement and the claimant's ability to perform the job given her work-related limitations. *See, e.g., Dewey v. Colvin,* 650 F. App'x 512, 514 (9th Cir. 2016) ("A conflict must exist between the VE's testimony and the DOT in order to trigger the ALJ's responsibility to resolve the conflict. Here, the DOT is silent on whether the jobs in question allow for a sit/stand option. … There is no conflict."); *McDaniel v. Colvin*, 2017 WL

---

[7]   Plaintiff also relies in part on *Jaquez v. Saul*, 840 F. App'x 246, 247 (9th Cir. 2021). (ECF 20 at 16.) *Jaquez* is an unpublished memorandum. See Ninth Circuit Rule 36-3. As the Ninth Circuit has emphasized, such non-binding dispositions should not be relied upon as a dispositive basis for a district court ruling. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("although memorandum dispositions can be cited, and may prove useful, as examples of the applications of settled legal principles when a district court or litigant is interested in demonstrating how a given principle operates in practice, a nonprecedential disposition is not appropriately used—as it was here—as the pivotal basis for a legal ruling by a district court.").

1399629, at *5 (C.D. Cal. Apr. 18, 2017) ("there can be no conflict between the vocational expert's testimony and the DOT where, as here, the DOT is silent on the subject in question"); *Torres v. Saul*, 2019 WL 7882061, at *5 (C.D. Cal. Oct. 31, 2019) ("there can be no conflict between the vocational expert's testimony and the DOT where, as here, the DOT is silent on the subject in question"); *Doty v. Colvin*, 2016 WL 1089171, at *5 (C.D. Cal. Mar. 18, 2016) (collecting cases and "agree[ing] with the decisions from other circuits and district courts that have found no conflict when the DOT is silent about a particular mental or physical requirement"). Thus, the ALJ was entitled to rely upon the VE's testimony.

Plaintiff contends that the jobs identified by the VE require more than occasional contact with others. According to Plaintiff, she has submitted "uncontradicted evidence" showing that only 4% of the counter supply worker positions, 5% of housekeeper laundry aide positions, and 34% of the kitchen helper are limited to occasional contact with others. (ECF 20 at 17-18.) However, Plaintiff's "uncontradicted evidence" consists of raw non-DOT data without authentication or expert interpretation. (*See* AR 267-400.) Notwithstanding her conclusory assertion that the data is "reliable, Government data," there are significant ambiguities in Plaintiff's argument. Most notably, Plaintiff's statistics are based upon critical assumptions that lack expert opinion. With regard to the job of counter supply worker -- which the VE identified as DOT No. 319.687-010 -- Plaintiff states that the occupation belongs to the larger group of dining room and cafeteria attendants. Plaintiff proceeds to set out the requirements for the job of dining room and cafeteria attendants and bartender helpers – including "facts" that a dining room attendant position requires constant contact with others in 87% of jobs and no contact with others in only 4% of jobs. (ECF 20 at 12; *see* AR 267-318.) The leap from the occupation of counter supply worker to dining room attendant is based entirely upon Plaintiff's lay assumptions. Plaintiff performs similar unsupported leaps with the other two occupations identified by the VE: With respect to the occupation of

housekeeper laundry aide, Plaintiff provides data and analysis for the job of "maid" (ECF 20 at 12-13, 17; *see* AR 319-363). With respect to the job identified by the VE as kitchen helper, Plaintiff relies upon data and analysis for the job "dishwasher." (ECF 20 at 13, 18; *see* AR 364-400.)

Moreover, even if the data cited by Plaintiff accurately reflects the level of contact with others required in the jobs of dining room attendant, maid, and dishwasher, there is no evidence that these occupations are the same as those identified by the VE. As the Commissioner points out, there is no evidence demonstrating that the terms used in O*NET are equivalent to those use in the Social Security context – i.e., whether the use of the phrase "occasional or less" as asserted by Plaintiff also means up to one-third of an eight-hour workday. *See, e.g.*, SSR 83-10, 1983 WL 31251, at *5 ("Occasionally" means occurring from very little to up to one-third of the time). Plaintiff has not offered any expert opinion interpreting data from the sources he provides, and the Court cannot conclude that the data put forth by Plaintiff and her lay interpretation of that data undermine the VE's testimony. *See Jeffrey A. B. v. Saul*, 2021 WL 2826432, at *6 (C.D. Cal. July 7, 2021) (finding "Plaintiff's subjective and convoluted lay assessment of data from non-DOT sources does not undermine the VE's testimony"); *Anju M. v. Saul*, 2019 WL 5784176, at *3 (C.D. Cal. Nov. 6, 2019) ("Plaintiff's data is not accompanied by any expert explanation, and it could reasonably be understood in different ways."); *Jose Alfredo G. v. Saul*, 2019 WL 6652086, at *6 (S.D. Cal. Dec. 5, 2019) ("In any event, Plaintiff merely presents a lay interpretation of the alternative OOH and O*Net data. Lay assessments alone are insufficient to undermine the VE's analysis; such attempts have been uniformly rejected by numerous courts.") (internal quotation omitted).

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED:  2/10/2022

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE